# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

CHARLES ALVIN SMITH,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[1]

Defendant.

_____________________________________/

Case No. 1:25-cv-00541-EGC

**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

(Doc. 1)

## I. INTRODUCTION

Plaintiff Charles Alvin Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI") under the Social Security Act (the "Act"). (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Erin Guy Castillo, United States Magistrate Judge.[2]

## II. BACKGROUND

Plaintiff was born in 1970. (Administrative Record ("AR") 217). He earned a GED. (AR 259). Plaintiff filed an application for SSI, alleging he became disabled on March 7, 2022. (AR

---

[1] On May 7, 2025, Frank Bisignano was named Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9).

17).

**A. Relevant Evidence of Record[3]**

The administrative record documents that Plaintiff underwent lumbar spinal surgery around 1997. (AR 493). July 2019 x-rays revealed changes in the lumbar spine, accompanied by documented muscle spasms and osteophytic spurring. (AR 338, 346). In April 2022, imaging confirmed the progression of severe lumbar disc degeneration and arthritic signs in the right hip joint. (AR 468, 475).

During a June 2022 consultative physical examination with Dr. Siekerkotte, Plaintiff exhibited right shoulder tenderness, restricted range of motion, a slight reduction in right biceps strength, pain with right hip range of motion testing, and localized tenderness. (AR 24, 482). However, the same examination also documented a normal gait, normal lower extremity strength, a normal Romberg test, negative bilateral straight-leg-raise tests, and an intact ability to stand on his toes, heels, and one leg alone. (AR 23–24, 482). Later that month, Plaintiff initiated physical therapy and pain management treatment, where an intake examination revealed positive straight-leg-raise and slump tests, reduced lower extremity sensation, and weakness. (AR 23, 571–75).

In October 2022, Plaintiff continued to report moderate to severe pain, noting that his symptoms were worsened by living in his car, and clinical notes documented an "abnormal" gait. (AR 530–32). In November 2023, Plaintiff reported the use of a walker as an ambulation aid, (AR 625, 629, 631), and in January 2024, Plaintiff exhibited a painful right hip range of motion, and his prescriptions for insomnia and pain medications were refilled. (AR 619–21). Lumbar spine imaging from that visit demonstrated severe degenerative changes. (AR 614).

**B. Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on June 29, 2022, and again on reconsideration on February 10, 2023. (AR 59–75). Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 177–89). The ALJ conducted a hearing on April 11, 2024. (AR 32–53). Plaintiff appeared at the hearing with his attorney and testified as

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

to his alleged disabling conditions and work history. (AR 39–48). Plaintiff testified that he is homeless, does not possess a driver's license and walks to get around. (AR 40–41). He stated that he believes that he is unable to perform any work because he can't stand up for long hours or move his arms well. (*Id.*). Plaintiff stated that at most, he can stand for 15 minutes and that he could walk one block at most before having to sit down and take a break. (AR 43). Plaintiff stated that he had been using a walker for two years. (AR 43). Plaintiff's daily routine consists of getting up in the morning, walking for about a block and then sitting down. (AR 44). Plaintiff stated that he has trouble lifting up things and that his back spasms about four times a day. He typically sleeps on the ground and has trouble getting up in the mornings. (AR 46). Plaintiff testified that he has problems reaching forward because of his shoulder, but thinks he would be able to reach repeatedly only without lifting items. (AR 45–47).

A Vocational Expert ("VE") also testified at the hearing, answering a series of hypothetical questions posed by the ALJ. (AR 48–52). In relevant part, the VE testified that being off task 15 percent or more of the time on a routine basis would preclude all competitive work activity. (AR 49). The VE further testified that a person with a hypothetical RFC in which an individual was limited to light work with additional postural, environmental, and occasional right overhead reaching limitations, could perform the jobs of sorter, packer, and cleaner/housekeeper. (AR 49–50). The VE further testified that the same jobs would remain appropriate even upon adding a limitation for a handheld assistive device required only for uneven terrain or prolonged ambulation of one block or more. (AR 50–51). Lastly, when questioned by Plaintiff's attorney regarding a limitation in which the assistive device is needed at least half the day for standing or walking, the VE testified that such a restriction would reduce consideration to the sedentary level of physical demand. (AR 51).

**C. The ALJ's Decision**

In a decision dated May 23, 2024, the ALJ found that Plaintiff was not disabled. (AR 14–31). The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 19–27). The ALJ decided that Plaintiff had not engaged in substantial gainful activity since March 7, 2022. (AR 19). At step two, the ALJ found Plaintiff's following impairments to be severe: lumbar

degenerative disc disease, right hip degenerative joint disease, right shoulder degenerative joint disease, and primary insomnia. (AR 19–20). The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 20–21).

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the following RFC:

> to perform a range of light work as defined in 20 CFR 416.967(b). Specifically, the claimant is able to lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently. He is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. He is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. He is unable to tolerate exposure to unprotected heights and use of dangerous moving machinery. He is able to engage in occasional overhead reaching with the right upper extremity.

(AR 21; *see also id.* 21–25). Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," the ALJ rejected Plaintiff's subjective testimony as to "the intensity, persistence and limiting effects of these symptoms" as being "not entirely consistent with the medical evidence and other evidence in the record." (AR 22).

The ALJ then determined that Plaintiff had no past relevant work experience (step four) but, in the alternative, given his RFC, he could perform a significant number of jobs in the national economy (step five). (AR 26–27). In making this determination, the ALJ relied on the VE's answers to a series of hypothetical questions the ALJ posed to the VE during the hearing. (*Id.*).

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The VE testified that a person with the RFC specified above could perform the jobs of sorter, packer, and cleaner/housekeeper. (AR 49–50). The ALJ ultimately concluded Plaintiff was not disabled at any time after March 7, 2022, the alleged onset date. (AR 27).

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 21, 2025. (AR 1–6). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or

'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff asserts two claims of error: the ALJ failed to (1) provide clear, convincing, and well-supported reasons for discounting Plaintiff's allegations of pain and physical dysfunction and (2) properly evaluate the examining medical source opinion of Dr. Siekerkotte. (*See* Doc. 12 at 4–9). The Commissioner counters that the ALJ reasonably discounted Plaintiff's subjective statements and appropriately evaluated the opinion of Dr. Siekerkotte. (Doc. 14 at 9–16). The Court agrees with the Commissioner that the ALJ properly evaluated the medical source opinion of Dr. Siekerkotte. However, the Court finds that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective allegations of pain and physical dysfunction. Accordingly, remand is warranted.

### A. Legal Standard

1. Review of ALJ's Evaluation of Medical Opinions

Plaintiff's first claim is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* at 792 (citing 20 C.F.R. § 404.1520c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Id.* at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id.* (quoting § 404.1520c(b)(3)). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Finally, if the

medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in their decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

2. Review of ALJ's Evaluation of Plaintiff's Subjective Symptoms

As it pertains to Plaintiff's second claim, in evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of the symptoms only if they give "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General

findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**B. Analysis**

1. Evaluation of Consultative Examiner's Opinion

With these legal standards in mind, the Court begins with the weight given to Dr. Siekerkotte's opinions.

a. Supportability

Plaintiff contends that the ALJ improperly discounted Dr. Siekerkotte's walking limitation ("slowly with breaks") by selectively ignoring objective evidence, such as lumbar CT scans showing severe degeneration and clinical signs like positive straight-leg-raise tests and reduced range of motion. (*See* Doc. 12 at 10–12). This argument is unpersuasive.

As to supportability, Plaintiff argues and identifies two limitations that Dr. Siekerkotte overlooked: those relating to walking capacity and those relating to Plaintiff's right shoulder. (Doc. 12 at 11–12). While Plaintiff points to positive straight-leg-raise tests and severe degeneration elsewhere in the record, Dr. Siekerkotte's own internal examination documented a normal gait, normal lower extremity strength, and explicitly negative bilateral straight-leg-raise tests. (AR 480–83). Because supportability evaluates an opinion strictly against the source's own objective findings, 20 C.F.R. § 404.1520c(c)(1), the ALJ rationally concluded that Dr. Siekerkotte's restrictive limitations lacked internal support. The ALJ found the "slowly with breaks" modifier as to walking unsupported because Dr. Siekerkotte's own examination documented a normal gait and normal Romberg test, and an intact ability to stand on toes, heels, and one leg alone. (AR 23–24; AR 482).

Further, Dr. Siekerkotte noted completely negative bilateral straight-leg-raise tests and normal range of motion in the knees and ankles. (AR 482). While Dr. Siekerkotte did find low back tenderness and limited lumbar flexion, (AR 482), the ALJ rationally concluded that these isolated findings did not support a restriction to walking "slowly with breaks" considering the otherwise normal musculoskeletal and gait mechanics observed during the same encounter. (AR

24).

Similarly, regarding the right shoulder, the ALJ properly assessed supportability by evaluating Dr. Siekerkotte's internal clinical signs against the provided restrictions. Although Dr. Siekerkotte documented right shoulder tenderness and restricted range of motion (flexion to 110 degrees and abduction to 130 degrees), the doctor noted only a "slight reduction in the claimant's right biceps strength." (AR 24, 482). The ALJ rationally concluded that these mild clinical findings failed to internally support more restrictive upper extremity or manipulative limitations. Because an opinion's supportability is directly tied to the objective medical evidence and supporting explanations presented by the medical source themselves, 20 C.F.R. § 404.1520c(c)(1), the Court finds that the ALJ's supportability findings for both the walking and shoulder limitations are supported by substantial evidence.

b. Consistency

Next, the ALJ evaluated the consistency factor under 20 C.F.R. § 404.1520c(c)(2) by comparing Dr. Siekerkotte's restrictions with the rest of the medical record. (AR 24). Plaintiff argues that the ALJ failed to reconcile Dr. Siekerkotte's "slowly with breaks" limitation with other objective evidence in the record, specifically pointing to positive straight-leg-raise and slump tests. (Doc. 12 at 8–9). However, a review of the decision demonstrates that the ALJ did not ignore this evidence.

The ALJ explicitly acknowledged that Plaintiff exhibited positive straight-leg-raise and slump tests, reduced lower extremity sensation, and weakness at his June 2022 pain management intake. (AR 23; citing AR 571–75). However, the ALJ discounted the weight of these findings by noting they were isolated and "not replicated in other exam notes." (AR 23). The ALJ noted that across the broader record, including Dr. Siekerkotte's exam and subsequent primary care visits, Plaintiff routinely displayed normal musculoskeletal maneuvers, an unassisted gait, and intact neurological signs, with gait abnormalities recorded on only one occasion. (AR 23, citing AR 480–83; 614–32).

Similarly, regarding the right shoulder, the ALJ properly evaluated the consistency of Dr. Siekerkotte's limitations against the record. The ALJ noted that Dr. Siekerkotte's restrictions were

inconsistent with the record as a whole, which documented only "mild early spurring" and early-stage osteoarthritis. (AR 23; citing 336–354, 469–478). The ALJ further observed that Plaintiff failed to report right shoulder pain or dysfunction during subsequent treatment encounters and lacked recent medical attention for the impairment. (AR 23–24; citing 534–97, 610–33). Because the ALJ identified specific, documented conflicts between Dr. Siekerkotte's restricted qualifiers and the broader evidence of conservative treatment and normal exams, the Court finds that ALJ's consistency determination is supported by substantial evidence.

To find otherwise, this Court would be required to re-weigh the evidence and adopt an alternative interpretation of the medical record. It is well established that resolving conflicts and ambiguities in the medical evidence is the exclusive responsibility of the ALJ, not the reviewing court. *Baker v. Berryhill*, 720 F. App'x 352, 356 (9th Cir. 2017); *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). Because the ALJ's interpretation of the evidence is rational and supported by substantial evidence, the Court finds that it must be upheld.

2. <u>Evaluation of Plaintiff's Subjective Statements</u>

Having determined that the ALJ properly evaluated the medical opinion evidence, the Court next turns to Plaintiff's second assignment of error: that the ALJ failed to provide clear, convincing, and well-supported reasons for discounting his subjective allegations of pain and physical dysfunction.

As a threshold matter, the ALJ made no finding that Plaintiff engaged in malingering and this record does not demonstrate evidence of malingering. Accordingly, the Court now considers whether the ALJ gave "specific, clear and convincing reasons" for rejecting Plaintiff's testimony. "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.2002).

For the reasons set forth below, the Court finds that the ALJ committed legal error in evaluating Plaintiff's subjective symptoms and medical opinion evidence, and the decision is not supported by substantial evidence.

As noted above, in determining Plaintiff's RFC, the ALJ concluded that Plaintiff's medically determinable impairments reasonably could be expected to cause the alleged symptoms. (AR 22).

The ALJ, however, also found that Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms were "not entirely consistent" with the medical record. (*Id.*) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009).

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "[w]hile subjective [symptom] testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's [symptoms] and [their] disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting [subjective symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base their decision solely on the fact that the medical record failed to support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating his subjective complaints.

However, if an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[G]eneral findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Importantly, an ALJ must explain how the medical evidence is inconsistent with a plaintiff's reported symptoms and limitations, *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015), and may not "selectively rel[y]" on medical evidence that favors disability without considering its context in the record, *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). Where the record establishes impairments that could reasonably produce the alleged pain and

physical dysfunction, the clear and convincing standard is the most demanding standard required in Social Security cases. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Garrison*, 759 F.3d at 1014–15.

In support of the conclusion that Plaintiff's complaints were "not entirely consistent with the medical evidence and other evidence in the record," the ALJ broadly identified several primary reasons, asserting that the clinical findings as a whole supported a restriction to light work but failed to corroborate a sedentary or worse exertional tolerance or a necessity for a walker. (AR 22–23). The Commissioner defends this assessment under *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992), arguing that the ALJ merely resolved rational conflicts within the clinical data, treatment history, assistive device records, and daily activities. The Court must determine whether this constitutes a clear and convincing reason for discounting Plaintiff's statements.

A careful review of the record reveals that (1) the evidence on which the ALJ relied was "cherry-picked," and (2) the ALJ failed to clearly and convincingly explain how the evidence cited was inconsistent with Plaintiff's subjective complaints.

a. The ALJ's Analysis of the Medical Evidence

First, the ALJ isolated temporary snapshots while ignoring historical data. While an ALJ may resolve conflicts in medical evidence, they may not isolate brief periods of temporary stability or mild findings to manufacture an inference of consistency while ignoring contrary, significant longitudinal data. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]reatment records must be viewed in light of the overall diagnostic record."). Here, the ALJ determined that Plaintiff's symptoms were essentially mild, isolating early degenerative changes in the right shoulder, (AR 346–47), and hip, (AR 469), alongside normal hip X-rays from November 2023. (AR 615–17). The ALJ then used the single snapshot of the June 2022 consultative physical examination, (AR 479–84), which noted functional ranges of motion and a normal gait, to discount the severe clinical abnormalities uncovered at a specialized pain management intake later that same month. (AR 571–75).

That specialized intake documented positive straight-leg-raise tests, positive slump tests, reduced sensation, and focal lower extremity weakness. (AR 573). Although the ALJ explicitly

acknowledged that lumbar imaging showed significant findings, the decision sought to minimize this objective reality by characterizing Plaintiff's actual examinations as showing "relatively mild or isolated clinical abnormalities." (AR 23). By framing these distinct physical impairments as anomalies that were "not replicated elsewhere" or "not entirely consistent" with the record, the ALJ did not resolve an evidentiary conflict; rather, the ALJ improperly viewed an objectively worsening clinical trajectory as an inconsistency, which was improper. An ALJ may not cherry-pick individual normal findings to support a conclusion of nondisability while disregarding multiple, well-documented abnormal examination and diagnostic results. *See Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016); *Ghanim*, 763 F.3d at 1164.

This error directly undermines the Commissioner's defense of the ALJ's treatment-history analysis. The Commissioner contends that Plaintiff's treatment with medications and physical therapy was conservative and not commensurate with disabling pain under *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001). However, the ALJ's assertion that Plaintiff's medication "relieved his pain," (AR 22–23), entirely divorces his treatment records from Plaintiff's longitudinal reality. The record demonstrates that Plaintiff was receiving specialized pain management interventions, including narcotic management, specifically because his pain remained severe and disabling. (AR 571–74, 618–19). The ALJ erred by equating Plaintiff's participation in pain management with an ability to work, as the pursuit of pain mitigation does not constitute substantial evidence that an impairment is non-disabling. Doing what one can to manage severe, chronic pain is not proof that the pain has been eradicated or that the individual can sustain full-time work. *See Garrison*, 759 F.3d at 1017 (holding that minor, temporary reports of improvement during treatment does not mean a claimant is capable of full-time work).

Furthermore, the ALJ minimized Plaintiff's documented ambulatory dysfunction by asserting that a gait abnormality was recorded on "only one occasion," (AR 529–32), and that routine primary care records, (AR 610–33), failed to explicitly corroborate the use of a walker. This "silence equals absence" methodology ignores the clinical context of the records. The single October 2022 gait abnormality note explicitly documented moderate to severe pain exacerbated by the reality of Plaintiff living in his car. The Commissioner argues under *Verduzco v. Apfel*, 188 F.3d 1087, 1090

(9th Cir. 1999), that the record fails to support Plaintiff's reported need for a walker, citing a 2022 questionnaire where he did not report using a device, (AR 275), a normal gait at the 2022 consultative exam, (AR 482), and a lack of explicit walker notations in primary care notes from late 2023 and 2024. (AR 620–21, 625–26). However, this "silence equals absence" methodology utilizes a legally deficient evidentiary standard. *See Rivera v. Colvin*, 2013 WL 6002445, at *4 (D. Or. Nov. 12, 2013) (holding that where a claimant's symptoms are concerned, "absence of evidence is not evidence of absence."). Unlike the explicit clinical conflicts in *Verduzco*, the absence of an explicit notation regarding an assistive device during a routine medication-refill or blood-pressure checkup does not prove that a device is medically unnecessary. The ALJ's analysis ignores the fact that in November and December 2023, Plaintiff was explicitly observed to be ambulating with a walker. (AR 625, 631). Crucially, updated imaging ordered by this exact provider confirmed severe lumbar spine disease, including progression of severe disc degeneration with evidence of a vacuum disc, sclerotic changes, an osteophyte complex, and moderate to severe right neural foraminal stenosis. (AR 475, 614). Here, the ALJ failed to build an accurate and logical bridge between the absence of a visual stride notation in a routine checkup and the conclusion that Plaintiff does not require the device for long-distance ambulation.

The ALJ's evaluation of Plaintiff's daily activities further highlights selective parsing. The Commissioner invokes *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022), arguing that Plaintiff's claims of debilitating physical limitations are actively contradicted by his admitted capability to shop for groceries, rake and mow the yard, and perform household chores. (AR 23–24). In doing so, the ALJ fundamentally overstated Plaintiff's activity level. While Plaintiff acknowledged performing light household chores and yard work, his underlying records explicitly clarify that he is only capable of performing these activities for a few minutes at a time before requiring an immediate break due to exacerbation of his pain. (AR 273, 275, 290, 479). This is highlighted by his testimony at the hearing. (*See* AR 44–46). The capability to perform household chores for brief, sporadic intervals with intervening rest breaks is not at odds with allegations of disabling pain, nor is it inconsistent with a claim for disability. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (a plaintiff's ability to carry on "certain daily activities" does not detract from credibility). A claimant need not

be totally incapacitated to establish eligibility for benefits, as impairments that preclude work and the pressures of a workplace environment are frequently consistent with doing more than merely resting in bed all day. *Garrison*, 759 F.3d at 1016. Disability claimants should not be penalized for attempting to maintain basic functional elements of a normal life in the face of their permanent physical limitations; only if the level of activity is truly consistent with the demands of a sustained, full-time work environment do those activities bear on a claimant's credibility. *Id.*; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's reliance on these activities, without addressing the qualifying limitations and rest breaks documented in the record, constitutes a failure to apply the correct legal standards.

This selective framework was extended to the medical source opinions under 20 C.F.R. § 416.920c. Although the ALJ found the consultative physical examination, (AR 479–85), "somewhat persuasive," the decision parsed out and ignored Dr. Siekerkotte's own structural qualifier that standing and walking must be performed "slowly with breaks." (AR 480). The ALJ argued this restriction was unsupported by the "normal gait signs" observed during that single examination, improperly using a brief, isolated snapshot to override the consulting expert's clinical judgment. The ALJ similarly dismissed the opinion of treating physician Dr. Kevin Ouma, (AR 577–78), who certified Plaintiff's debility and gait instability, by mischaracterizing the restrictions as "temporary." Dr. Ouma's findings were part of a multi-year longitudinal record of spinal degeneration, (AR 469–78), and subsequent walker usage well into 2024. (AR 610–33). The ALJ's reliance on selective citations to the record without acknowledgment of the pieces of medical evidence that tend to support Plaintiff's complaints undermines the ALJ's conclusions.

b. The ALJ's Evaluation of Plaintiff's Subjective Symptoms

Second, the ALJ failed to adequately explain how the medical evidence was inconsistent with Plaintiff's reported symptoms and limitations. As an initial matter, the ALJ's analysis includes several paragraphs in which the ALJ recites a chronological summary of the medical evidence and then makes a general finding that the evidence supports the light exertional category. (AR 22–23). However, the ALJ failed to tie the medical evidence to the Plaintiff's specific allegations of physical dysfunction, namely, Plaintiff's testimony that he cannot stand for more than 15 to 30 minutes at

one time, can only walk for one block at a time without a walker, and can lift a maximum of six pounds. (AR 40–45, 288, 290). The ALJ does not explain how any purported inconsistency relates to these strict lifting and standing limitations or the final RFC determination that Plaintiff is limited to light work.

Specifically, the ALJ relied on "early" or "mild" radiologic findings in Plaintiff's right hip and right shoulder, to conclude that his impairments are "not entirely consistent with his functional allegations." (AR 23). However, this rationale is legally deficient. The ALJ failed to explain how mild joint changes in the hip or shoulder logically contradict Plaintiff's primary claims of debilitating lumbar pain, a sedentary exertional tolerance, or his documented need to use a walker. The record reflects that Plaintiff's allegations of disabling pain are primarily rooted in a long history of progressive spinal degeneration, which the ALJ's own decision acknowledges has advanced to a "severe" stage. (AR 22–23).

Similarly, the ALJ notes that Plaintiff's positive physical findings, including positive straight-leg-raise and slump tests, sensory deficits, and lower extremity weakness, were primarily documented at his June 2022 pain management intake. (AR 23). The ALJ discounted these potentially significant findings on the ground that they were "not replicated" during a consultative examination earlier that month. (*Id.*). Yet, the ALJ provides no explanation as to how a single, earlier consultative exam somehow erases or disproves a subsequent, specialized pain management clinical evaluation. The ALJ fails to build a logical bridge explaining how a fluctuating clinical presentation undermines Plaintiff's claims of constant, severe pain.

Without a clear explanation of how the medical evidence actually conflicts with Plaintiff's reported limitations, or the extent to which the ALJ credited Plaintiff's testimony when formulating the RFC, the ALJ's "path cannot be reasonably discerned." *Molina v. Astrue*, 674 F.3d 1112, 1121 (9th Cir. 2012); *see also Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). This deficiency is underscored by the fact that the ALJ's own summary of the medical evidence highlights significant physical abnormalities, including positive straight-leg-raise tests, reduced sensation, objective focal weakness, and severe lumbar imaging, that actively support Plaintiff's reports rather than the ALJ's ultimate conclusions.

For these reasons, the Court finds that the ALJ's evaluation of Plaintiff's subjective physical symptoms is not supported by substantial evidence and fails to satisfy the clear and convincing standard.

**C. Harmlessness Review**

The Court must now consider whether the ALJ's error was harmless. *Molina*, 674 F.3d at 1115. Courts look to the record as a whole to determine whether the error alters the outcome of the case. *Id.*; *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted) (first quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and then quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

The Court cannot conclude that this legal error was harmless. The ALJ's failure to properly evaluate Plaintiff's testimony regarding his strict standing and walking tolerances, his long-distance reliance on an assistive device, and the functional restrictions identified by his examining providers directly impacted the formulation of the RFC for light work. Indeed, during the administrative hearing, the VE explicitly confirmed that if the light work hypotheticals were amended to account for Plaintiff's need for an assistive device for "at least half the day for standing or walking," it would preclude performance of the light jobs cited and "reduce consideration to the sedentary level of physical demand." (AR 51). Because the ALJ's light RFC assessment failed to account for this documented ambulatory limitation, the hypothetical questions posed to the VE were incomplete, and the expert's testimony regarding light work cannot support the non-disability determination. *See Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (holding that if an RFC fails to include all of a claimant's limitations, the vocational expert's testimony has no evidentiary value to support a finding of non-disability).

Had the ALJ properly accounted for Plaintiff's documented ambulatory instability, or the consultative examiner's assessment that Plaintiff must walk slowly with intermittent breaks, a more restrictive residual functional capacity or a finding of disability may have been required.[5] Thus, the

[5] This is not to say that the disability determination will or should be different regarding the period at issue--only that the Court cannot determine the outcome would remain the same upon a correct evaluation of the record.

error was not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

**D. Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, the Court finds that remand for further proceedings is warranted. *See*, *e.g.*, *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (affirming a remand for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further findings evaluating the credibility of [the claimant's] subjective complaints"). On remand, the Commissioner shall further develop the record, as outlined above, to properly assess Plaintiff's subjective symptom statements in this action.

**i. CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Charles Alvin Smith and against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **October 5, 2026**

Erin Sury Castillo

UNITED STATES MAGISTRATE JUDGE